# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**FERNANDO LOPEZ DE LA CRUZ,**
        **Petitioner,**

    v.                                    Case No. 25-CV-1562

**DALE SCHMIDT, et al.,**
        **Respondents.**
_____

## DECISION AND ORDER

Petitioner Fernando López de la Cruz is a Mexican national who entered the United States without authorization around July 2019. On July 3, 2025, petitioner was arrested and detained in the Dodge Detention Facility in Juneau, Wisconsin pending removal proceedings. He was granted bond by an immigration judge ("IJ") on July 23, 2025, but this order was automatically stayed pending an appeal by the Department of Homeland Security ("DHS"). On October 13, 2025, petitioner filed the instant petition. He alleges that the government is unconstitutionally denying his Due Process rights under the Fifth Amendment and violating the Immigration and Naturalization Act ("INA") by reclassifying his detention as pursuant to 8 U.S.C. § 1225(b)(2), rather than 8 U.S.C. § 1226. The automatic stay then lapsed and on November 4, 2025, petitioner posted bond and was released. On November 6, the Board of Immigration Appeals ("BIA") revoked his bond. For the reasons outlined below, I find that petitioner is correctly classified as a noncitizen[1] subject to 8 U.S.C. § 1226 and order that any revocation of bond must be pursuant to the

---

[1] Throughout this order I use the term "noncitizen" rather than "alien," which is the term used through the Immigration and Nationality Act. I intend for these terms to be equivalent.

original bond order or a new finding under 8 U.S.C. §1226, not through invocation of 8 U.S.C. § 1225.

I. BACKGROUND

Petitioner, now twenty-two years old, was born in Mexico and entered the United States around July 2019. ECF No. 1-2 ¶1. He fled Mexico based on fear of persecution and torture by local cartel members. *Id*. ¶ 2. On July 3, 2025, petitioner was attending a court date for driving without a license when he was apprehended by Immigration and Customs Enforcement ("ICE") officials. *Id*. ¶ 4. At that time, he was issued an arrest warrant, a notice of custody determination, and a notice to appear. ECF No. 1 ¶ 22. The notice of custody determination told petitioner that he would be detained by DHS pending removal proceedings. ECF No. 1-4 at 1. This form also told petitioner that he could request a review of this custody determination by an IJ. *Id*. On the same day, petitioner requested a review of his custody determination. *Id*.

On July 14, 2025, petitioner filed a motion for bond consideration, which was denied three days later. ECF No. 1 ¶ 26. The IJ cited 8 U.S.C. § 1225(b)(2) as the reason for the denial. *Id*. On July 23, 2025, petitioner filed a renewed motion for bond consideration, which was heard that day by an IJ. ECF No. 1-6 at 1–2. DHS argued that petitioner was detained pursuant to 8 U.S.C. § 1225(b)(2) rather than 8 U.S.C. § 1226, making him ineligible for bond, but the IJ rejected this argument, found petitioner eligible for bond, and set bond at $7,500. ECF No. 1 ¶ 27. DHS immediately filed a notice of intent to appeal, invoking an automatic stay under 8 C.F.R. § 1003.13(i)(2). *Id*. ¶ 28. On August 1, 2025, DHS filed a notice of appeal arguing, once again, that petitioner was ineligible for bond because he was detained pursuant to 8 U.S.C. § 1225(b)(2). ECF No. 1-8 at 4.

While the appeal was pending, the automatic stay lapsed. *See* 8 C.F.R. § 1003.6(c)(4). On November 4, 2025, petitioner posted bond and was released. ECF No. 14 at 1. On November 6, 2025, the BIA vacated the IJ's order granting bond. *Id*. Petitioner is now subject to the ordinary restrictions of bond, in addition to the condition that he does not drive without a valid license. ECF No. 1-6 at 1.

## II. JURISDICTION

### A. The Immigration and Naturalization Act

"A federal court must always satisfy itself that it has jurisdiction. . . . Thus, even if the parties fail to spot a jurisdictional issue or agree that the court has jurisdiction, the court cannot proceed unless it makes an independent determination that it has jurisdiction." *Riley v. Bondi*, 606 U.S. 259, 273 (2025) (internal citations omitted). Therefore, although neither party has contested jurisdiction, I begin by ensuring that I have jurisdiction over the matter at hand.

This case arises out of federal law; namely, two provisions of the INA, 8 U.S.C. §§ 1225, 1226. However, Congress has placed several restrictions on Article III courts' jurisdiction to hear immigration-related matters. There are three statutory limitations relevant here: Section 1252(g), Section 1226(e), and Section 1252(b)(9). These sections limit judicial review of certain immigration matters. I find that none of these preclude my review of the instant petition.

Section 1252(g) states, in relevant part:

> Except as provided in this section . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g).

3

The Supreme Court interprets Section 1252(g) narrowly, holding it applies "only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 482 (1999) (emphasis in original). In this case, petitioner is not challenging any of these three actions. The proceedings have commenced and are in the process of adjudication. There is no removal order yet to be executed. Instead, petitioner challenges the decision to classify him as a noncitizen subject to Section 1225(b)(2) rather than Section 1226. Thus, Section 1252(g) does not preclude my jurisdiction in this matter.

Section 1226(e) states, in relevant part:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole.

8 U.S.C. § 1226(e).

Section 1226(e) also has no impact on my jurisdiction. This section only limits my jurisdiction to hear challenges to the Attorney General's "discretionary judgment" regarding release or detainment. *Demore v. Kim*, 538 U.S. 510, 516 (2003). Much as in *Kim*, the petitioner here is challenging the statutory framework under which he is detained, not any discretionary judgment. *Id*. at 517–18. Section 1226(e) does not prohibit my review of such challenges.

Finally, Section 1252(b)(9) states, in relevant part:

> Judicial review of all questions of law and fact, . . . arising from any action taken or proceeding brought to remove an alien . . . shall be available only in judicial review of a final order . . . . Except as provided in this section, no court shall have jurisdiction . . . to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9).

4

The Supreme Court more recently rejected an "expansive" interpretation of Section 1252(b)(9). *Jennings v. Rodriguez*, 583 U.S. 281, 293–94 (2018). In this case, as in *Jennings*, petitioner is not asking me to review an order of removal, challenging the decision to detain him in the first place or the decision to seek removal, or any part of the process by which his removability will be determined. *Id*. at 294–95. Therefore, Section 1252(b)(9) is not a jurisdictional bar to my review.

Petitioner is asking me to determine whether he is subject to Section 1225(b)(2), as respondents claim, or Section 1226, as he claims. This is not a matter of discretion. In fact, the question is ultimately whether DHS is *mandated* to detain petitioner pending removal proceedings against him under Section 1225(b)(2). Petitioner does not challenge the removal proceedings themselves, including their initiation or procedure, nor does he challenge his initial detention. Rather, petitioner challenges whether the IJ who reviewed his detention had statutory authority to consider bond and, if so, whether that bond determination should be enforced. None of the statutory provisions limiting the review of immigration proceedings by Article III courts are applicable here.

### B. Section 2241 Habeas Petitions

This habeas petition, brought under Section 2241, alleges that petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Therefore, I only have jurisdiction to hear this petition if petitioner is "in custody." When this petition was filed, petitioner was detained in Dodge Correctional Institution. As previously described, ICE ultimately permitted him to post bond and released him. However, I find that this does not pose a jurisdictional bar to his petition.

The Supreme Court has acknowledged that physical detention is not a "prerequisite" to habeas relief. *Rumsfeld v. Padilla*, 542 U.S. 426, 437 (2004). In the

5

criminal context, the Seventh Circuit has held that a defendant remains "in custody" despite posting bond because the "release conditions impinge[] on [the petitioner's] unconditional freedom." *Green v. Milwaukee County Circuit Court*, 148 F.4th 461, 463 (7th Cir. 2025) (citing *Justices of Boston Municipal Court v. Lydon*, 466 U.S. 294, 300–01 (1984)). The Seventh Circuit has cautioned, however, that limitations on freedom must have some physical element to satisfy the custody requirement. *Virsnieks v. Smith*, 521 F.3d 707, 717–18 (7th Cir. 2008). Although there is no case on point in the Seventh Circuit regarding a noncitizen's release on bond pending removal proceedings,[2] other circuits have held that the inherent conditions of bond pending immigration-related removal proceedings are enough to consider someone "in custody" for the purposes of a habeas corpus petition. *E.g.*, *Pelletier v. United States*, 588 F. App'x 784, 791–92 (10th Cir. 2014); *Herrera-Castanola v. Ridge*, 204 F. App'x 628, 631 (9th Cir. 2006).

In this case, petitioner posted bond and was released. Following his release, the BIA revoked petitioner's bond. The revocation does not cite petitioner's conduct, but rather the BIA's interpretation of the INA and its assertion that 8 U.S.C. § 1225(b)(2) is applicable to the petitioner. ECF 14-1 at 1–2. Although petitioner is not currently detained, this revocation means that he is under threat of arrest and detainment. This is a physical restraint on petitioner's liberty. At any time, he may now be arrested and re-detained. This falls squarely within Section 2241's custody requirements.

---

[2] The Seventh Circuit has held that once a noncitizen is no longer in the United States refusal of entry or an order of removal in absentia are insufficiently restrictive to meet the "in custody" requirement. *Rivas-Melendrez v. Napolitano*, 689 F.3d 732, 738–39 (7th Cir. 2012); *Samirah v. O'Connell*, 335 F.3d 545, 549–551 (7th Cir. 2003). But neither of these are at issue here.

6

Moreover, the issue is not moot because petitioner is asking me to declare that it is illegal under the INA to hold him without the opportunity for bond. The BIA has held that petitioner is categorically ineligible for bond because he is properly classified as a noncitizen subject to Section 1225(b)(2). ECF No. 14-1 at 1–2. I may still order that petitioner's detention be analyzed under Section 1226(a), rather than Section 1225(b)(2). In other words, there is still relief I can provide. Having considered the jurisdictional limitations in the INA and Section 2241 of the habeas corpus statutes, as well as mootness, I am satisfied that I possess jurisdiction over this matter and can proceed.

### III. DISCUSSION

Noncitizens who are arrested pursuant to immigration-related orders are sometimes detained and sometimes released, either of their own recognizance or on bond. Whether that individual is eligible for bond is governed primarily by two sections of the INA: 8 U.S.C. §§ 1225 and 1226. Section 1225 mandates detention for certain individuals who are "applicants for admission," as defined by 8 U.S.C. § 1225(a)(1). *See* 8 U.S.C. §§ 1225(b)(1)(B)(iii)(IV); 1225(b)(2)(A). Respondents claim that petitioner is an "applicant for admission" based on the plain language of Section 1225. Therefore, he is subject to Section 1225 and is not eligible for bond. Aside from the text of the statute, respondents also point to the history of the statute and congressional intent. I discuss these arguments in detail below.

In contrast, petitioner claims that he is subject to Section 1226(a), which permits, but does not mandate, detention and outlines the possibility of providing bond. Petitioner argues Section 1226 is applicable to noncitizens who are already present in the United States when they are arrested, as he was. Section 1225, he says, is only applicable to noncitizens who are arrested while in the process of arriving to the United States, i.e.,

those who are arrested at the border, at a port of entry, or geographically or temporally close to their entry to the United States. Petitioner alleges that, as he was neither geographically nor temporally close to his entry into the United States at the time of his arrest, he should be subject to Section 1226. In support of his position, petitioner points to the plain text of the statute, historical interpretation of the statute, and recent amendments to the statute. I also discuss these in detail below.

I note at the outset that no appellate court has squarely addressed the issue at hand.[3] Thus, I begin my inquiry with the text of the statute and "careful examination of the ordinary meaning and structure of the law itself." *Nawara v. Cook County*, 132 F.4th 1031, 1035 (7th Cir. 2025) (quoting *Food Mktg. Ins. v. Argus Leader Media*, 588 U.S. 427, 436 (2019)). "If the statutory text is clear and unambiguous, [my] inquiry ends." *Petr Tr. for BWGS, LLC v. BMO Harris Bank N.A.*, 95 F.4th 1090, 1098 (7th Cir. 2024).

At first glance, it may appear that the statute is "clear and unambiguous." Section 1225(b)(2) states than a noncitizen "who is an applicant for admission . . . shall be detained" in the circumstances set forth therein. 8 U.S.C. § 1225(b)(2). An "applicant for admission" is a noncitizen "present in the United States who has not been admitted or who arrives in the United States." § 1225(a)(1). In the context of the INA, to be "admitted" means "the lawful entry of the [noncitizen] into the United States after inspection and authorization by an immigration officer." § 1101(a)(13)(A).

---

[3] However, I find it persuasive that dozens of district courts have considered this matter, and the *vast* majority have ruled in favor of similarly situated petitioners. *See Ramirez Valverde v. Olson*, No. 25-CV-1502, 2025 WL 3022700, at *2 (E.D. Wis. Oct. 29, 2025) (collecting cases); *but see, e.g., Cirrus Rojas v. Olson*, No. 25-CV-1437, 2025 WL 3033967 (E.D. Wis. Oct. 30, 2025).

8

There are two important facts of legal relevance: petitioner is a Mexican citizen, ECF No. 1 ¶ 1 and ECF No. 12 at 1, and he allegedly has no legal authorization to be in the United States, ECF No. 13 at 2. Respondents urge that this is enough to subject petitioner to Section 1225(b)(2). Petitioner is "present" in the United States and has not been "admitted" because he never entered lawfully; thus, he "shall" be detained. There is no flexibility to offer bond, respondents claim. But "[i]t is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Michigan Dept. of Treasury*, 489 U.S. 803, 809 (1989). *See also CFPB v. Townstone Fin., Inc.*, 107 F.4th 768, 776 (7th Cir. 2024) ("We read a statute as a whole rather than as a series of unrelated and isolated provisions. . . . The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.") (cleaned up).

Respondents' preferred interpretation becomes impossible when read in the context of the entire statutory text. To begin, Section 1225 is titled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, § 302, 110 Stat. 3009-548 (1996) ("IIRIRA"). The key phrase in this title is "arriving aliens." By using the present tense, Congress appears to direct this section to individuals presently and actively *arriving*, not those who arrived in the United States long ago. Furthermore, just below the definition of "applicants for admission," Congress

9

clarified that it did not mean to include stowaways.[4] § 1225(a)(2). The focus here is, once again, people who are presently entering aboard some form of transportation into the United States. This is another clue that Section 1225 was meant to apply to people actively traveling into the United States, rather than those already within its borders.

Moreover, Section 1225(b)(2) uses similar present tense language. The provision states, in full: "[I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for [removal] proceeding[s]." § 1225(b)(2)(A). The text of Section 1225(b)(2) references both "applicant[s] for admission" and "an alien seeking admission." Are these phrases equivalent, or did Congress mean something different by including both descriptions? I follow the Supreme Court's guidance on this: "We are reluctant to treat statutory terms as surplusage in any setting." *Bufkin v. Collins*, 604 U.S. 369, 386 (2025) (quoting *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001)). Congress could have used the phrase "applicant for admission" twice, but it modified "applicant for admission" by adding that "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained." Congress began by invoking a category of individuals—applicants for admission—and then clarifying that this provision applies to a subset of individuals—those seeking admission. Once again, the present tense verb "seeking" in the broader context of Section 1225 suggests that Congress meant for this to apply to those actively and presently entering or having very recently entered the United States.

---

[4] Stowaways are individuals who "obtain[] transportation without consent of the owner, charterer, master or person in command of any vessel or aircraft through concealment aboard such vessel or aircraft." § 1101(a)(49).

Finally, Section 1225(b)(2)(B) clarifies that these provisions do not apply to crewmen and stowaways. § 1225(b)(2)(B)(i), (iii). Much like the prior reference to stowaways, this again evokes the concept of people who are actively and presently entering the United States. Other district courts have similarly found that "the theme of 8 U.S.C. § 1225 is the timing of when an alien arrived in the country." *Chilel Chilel v. Sheehan*, No. C25-4053-LTS-KEM, 2025 WL 3158617, at *3 (N.D. Iowa Nov. 12, 2025).

The interpretation I have outlined above effectively resolves the issue and comports with the Supreme Court's understanding of this statute: Sections 1225(b)(1) and 1225(b)(2) apply to "certain aliens seeking admission into the country," while Section 1226 is a "default rule" that "applies to aliens already present in the United States." *Jennings*, 583 U.S. at 287, 303. But even if this interpretation were not dispositive, it at least highlights that the plain meaning of the statute is not so clear and unambiguous as to end the inquiry.

It is telling that, since the passage of IIRIRA, the agencies responsible for immigration have interpreted the statute to allow noncitizens arrested while already living in the United States to be released on bond. *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) ("Despite being applicants for admission, alien who are present without having been admitted or paroled . . . will be eligible for bond and bond redetermination."). Only since July of this year has DHS suddenly and without cause changed its interpretation of the statute. *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025).

True, I am not bound by agency interpretations of statutes. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024). Nonetheless, it is persuasive that for nearly *thirty*

years and over *five* presidential administrations of different parties, including the entire first administration of President Trump, the same interpretation has remained: noncitizens who are arrested while present, i.e., living in the United States, are eligible for bond under Section 1226(a). If I interpreted the statute as respondents ask me to, I would not only be holding that all of those administrations misinterpreted the law; I would be holding that they *contravened* the law by allowing noncitizens out on bond when they were categorically ineligible for bond. It seems much more likely that respondents are now misinterpreting and misapplying the law.

Moreover, Congress has also impliedly interpreted Section 1226 as applicable to noncitizens arrested while present or living in the United States. In January of 2025, Congress passed the Laken Riley Act. 139 Stat. 3. Among other things, the law amended Section 1226(c) which mandates custody for noncitizens who have committed certain criminal offenses. The Act expanded the scope of the statute, requiring detention of noncitizens facing inadmissibility charges who are charged with, arrested for, convicted of, or admit having committed certain specific crimes. Importantly, this amendment is applicable only to noncitizens facing *inadmissibility* charges, i.e., noncitizens who have not been admitted. According to respondents, everyone who has not yet been admitted is an "applicant for admission," subject to Section 1225, and must be detained. But, if everyone who is an "applicant for admission" was already subject to mandatory detention, prior to this amendment, why would Congress pass a law clarifying that a specific subset of "applicants for admission" must be detained? Respondent's preferred interpretation renders the relevant amendments in the Laken Riley Act thoroughly redundant and superfluous. This result "defies [a] longstanding canon[] of statutory construction— . . . the rule that we must normally seek to construe Congress's work 'so that effect is given

to all provisions, so that no part will be inoperative or superfluous, void or insignificant.'" *Ysleta Del Sur Pueblo v. Texas*, 596 U.S. 685, 698–99 (2022) (quoting *Corley v. United States*, 556 U.S. 303, 314 (2009)).

The only way to interpret the statute such that the amendment is neither redundant nor superfluous is to presume that not all "applicants for admission" must automatically be detained. This comports with petitioner's proposed interpretation—the same interpretation that five presidential administrations have adhered to, the same interpretation that Congress endorsed through its amendment in January of this year, and the same interpretation that dozens of fellow district courts have accepted.[5] Section 1225 applies to noncitizens who are arrested geographically or temporally close to their entry into the United States. Section 1226 applies to noncitizens who are arrested while present or living in the United States. Petitioner, who has been present in the United States for over six years and who was arrested in Fon du Lac, Wisconsin, is in the latter category. Petitioner is eligible for bond under Section 1226(a).

A writ of habeas corpus under Section 2241 may be granted if petitioner is "in custody in violation of the Constitution *or* laws or treaties of the United States." 28 U.S.C. § 2241(c)(3) (emphasis added). I have found that respondent's custody (i.e., the threat of re-arrest) is a violation of the INA, a law of the United States. I do not need to address petitioner's constitutional arguments and will not do so.

### IV. CONCLUSION

For the reasons stated, **IT IS ORDERED** that the petition for a writ of habeas corpus is **GRANTED**. The Clerk of Court will enter judgment accordingly. Because

---

[5] *See* n.3, *supra*.

13

Case 2:25-cv-01562-LA   Filed 11/19/25   Page 13 of 14   Document 18

petitioner is subject to Section 1226(a), revocation of petitioner's bond must be pursuant to bond proceedings under Section 1226, not invocation of Section 1225. Petitioner is subject to the conditions of bond imposed by the Immigration Judge who applied Section 1226(a), ECF No. 1-6, and may only be rearrested for violations of those conditions, or a new finding by an Immigration Judge that he is a danger to society or a flight risk. *See also* ECF No. 1-9.

Dated at Milwaukee, Wisconsin, this 19th day of November, 2025.

/s/ Lynn Adelman
LYNN ADELMAN
United States District Judge

14

Case 2:25-cv-01562-LA   Filed 11/19/25   Page 14 of 14   Document 18